This action is brought by plaintiff under the Employers' Liability Law, so called, to recover damages for the alleged negligent killing by defendant of her husband and intestate. At the time of the accident, which happened on October 12, 1910, intestate was and for several months had been in the employ of defendant as a freight brakeman running out of North White Plains in this state. At and before this date the defendant maintained at said place a station and three groups of tracks which were known, respectively, as yards A, B and C, we being concerned simply with the latter two. The tracks in that locality ran substantially north and south, the easterly one of the main tracks being the north-bound track. As said track approached the station from the south a branch diverged from it a short distance towards the east, thereby leading to the station house. After said branch had partially passed the station a branch track in turn diverged from it towards the east, and from this latter track several switch tracks led. These tracks numbering in the neighborhood of eight or ten constituted yard C, the most westerly ones thereof being known in this case as tracks Nos. 1 and 2, and on the former one of these two the accident happened. *Page 448 
Directly west of track No. 1 was a clear space of something more than fifteen feet leading from a point in front of the station northerly through the entire distance involved in this case. Next westerly of this space was the north-bound main track of the defendant, and then next westerly of this the tracks constituting yard B.
During all of the time under consideration defendant had operated by electricity a passenger train which proceeding northward arrived at the station over the north-bound main track and branch track already mentioned at 8:31 in the evening. After discharging its passengers this train was accustomed to run northerly into yard C where it was shifted and then moved out again toward the south at 9:03. Defendant during the same period also operated a freight train which was made up each night in the yard B at a point about eight hundred feet northerly from the station and dispatched in a southerly direction at 9:15 and which was the train on which intestate worked.
Ordinarily the intestate reported at the station soon after eight o'clock and then proceeded northerly through the yard to his train. On the evening in question, however, he did not leave the station until about 8:30, it being a question of fact whether the passenger train had arrived there when he started for his train. This passenger train, however, arrived, so far as appears, at the usual time, and after discharging its passengers proceeded northerly with its headlight lighted on track 1 in yard C at a slow rate of speed and at a distance of about 120 feet from the station house ran over and killed the intestate. There is no evidence conclusively binding on plaintiff showing what caused the intestate to get under the train.
I shall not discuss the question whether the evidence permitted the jury to find defendant guilty of negligence because of fault on the part of the motorman operating its train, for we are all agreed that the evidence shows *Page 449 
that intestate was guilty of contributory negligence as a matter of law, although the statute under which the action was brought requires the defendant to establish this as a defense.
The testimony clearly establishes and the learned trial justice held that the intestate "of course was familiar with the yards, the location of the tracks, and, in general, at least with the defendant's sytem of operating its trains there." The tracks which are involved in this case were perfectly open to view from a point southerly of the station northerly to a point where intestate was accustomed to meet his freight train each night, and which latter point was several hundred feet north of the place of the accident. Aside from the general observation which during a period of several months he would naturally make of the passenger train which ran over him, the time of its arrival and the method of its operation were necessarily emphasized in his mind by the fact that each night he went out with his train a short time after its arrival and departure, and there was no opportunity for confusion of trains, because no other train arrived at the station for about an hour before the one in question, and no other one departed therefrom up to the time intestate's own train left, except this same passenger train starting back on its southerly journey. Therefore, when intestate on the night in question left the station to go to his train if the passenger train was not already at the station he knew that it soon must arrive and proceed northerly into the yard in the direction in which he himself was going. It is suggested that it did not always run northerly into the yard on the same track as on this evening, but even so, intestate knew that it was sure to follow him on one of the few tracks, and that it might be on any one of them.
In proceeding northerly to his train at the time he selected, intestate was offered a perfectly safe course of travel if he saw fit to take the clear space of fifteen feet *Page 450 
westerly of the track on which the passenger train was moving. In case he so traveled no possible harm could come to him in reaching his train. The way was absolutely safe. For some reason he apparently saw fit to proceed northerly between tracks 1 and 2. The space between these was occupied by two third rails, each one located about twenty-six inches from the nearest track, and the two being apart from one another by about twenty-six inches. It was, of course, possible for the intestate to walk in safety between those tracks even though the passenger train came northerly on one of them, and he knew that it could only come on one of them because the other was occupied with standing cars. Under these circumstances, knowing that the train was liable at any time to come as it did, the obligation rested on him to exercise his powers of sight and hearing to avoid danger therefrom. The train was in plain sight from the time it left the station until it struck him, and if he had looked as he was bound to he must necessarily have seen it, and could easily have avoided danger.
An old railroad employee traveling through switching yards may not thus in the first instance abandon a perfectly safe pathway for a more dangerous one, and then turn his back on a train which he knows may approach at any moment, without being subject to the charge of carelessness.
It is urged that since the obligation rests upon the defendant to establish contributory negligence it must by its evidence exclude every possible theory of an accident without intestate's negligence before it can ask to have it held as a matter of law that he was negligent. Undoubtedly if the evidence permitted the jury to find the intestate free from contributory negligence on any reasonable theory it would be the duty of the court to permit it so to do. But I do not apprehend that a jury may be permitted to excuse the intestate from the charge *Page 451 
of negligence on merely conjectural possibilities utterly unsuggested by any evidence, and unless they may be thus permitted to do we see nothing which defends this intestate against the charge.
The respondent especially calls to our attention the case ofTexas Pacific Ry. Co. v. Gentry (163 U.S. 353) as an authority on very similar facts for the proposition that the question of intestate's contributory negligence should be submitted to the jury. An examination of that case, however, discloses peculiar facts in the arrangement of the locomotive and flat car which it was pushing and which ran over the intestate in the yard which clearly differentiate it from the present case and properly made the issue of the intestate's conduct one for the jury. The principles of law affirmed in the opinion do not in any manner conflict with our views.
The judgment must be reversed, and a new trial granted, costs to abide event.
CULLEN, Ch. J., WILLARD BARTLETT, CHASE, COLLIN and HOGAN, JJ., concur; WERNER, J., absent.
Judgment reversed, etc.