dence showing that decedent exercised any care whatever in attempting to cross defendant's track, nor does it disclose any condition which would have rendered the use of decedent's senses of sight and hearing unavailing. Without such proof plaintiff's case must fail. Wiwirowski v. L. S. & M. S. R. Co., 124 N. Y. 420, 26 N. E. 1023; Wieland v. Delaware & Hudson Canal Co., 167 N. Y. 19, 60 N. E. 234, 82 Am. St. Rep. 707; Lamb v. Union Railway Co., 195 N. Y. 260, 88 N. E. 371.

In the Lamb Case, above cited, the decedent was run over and killed by one of defendant's trolley cars. In that case the night was dark and foggy, and the case otherwise presented much stronger circumstances in favor of the plaintiff's contention than the case at bar. The Court of Appeals in that case held that the facts did not admit of the necessary inferences to find the intestate free from contributory negligence. And the court there held that the circumstances pointed quite as much to the lack of reasonable care, or even to the possibility of suicide, as to the exercise of reasonable care and caution on the intestate's part, and nonsuit should be granted.

As before stated, Mrs. Seeman, on the night in question, was more or less under the influence of intoxicating liquors, and it is probable that she waited within its shadow for the passing of defendant's flyer; that she then proceeded easterly, and was seen by the witness Klinch on the River Road. Frequent trains were passing on the several railroad tracks in the vicinity during the night, and it is entirely probable that decedent was struck by some other train during her wanderings. Both the engineer and fireman testify to their absence of knowledge of the alleged accident, nor were there any marks or indication upon the locomotive of its having struck anything on its trip.

It seems to me that the learned trial court should have granted defendant's motion for nonsuit, made at the close of the evidence in the case, and that in rendering its verdict the jury was permitted to guess and speculate on every essential element in the case. The learned trial court erred in refusing to grant defendant's motion to set aside the verdict rendered.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event. All concur; KRUSE, P. J., and ROBSON, J., in result only, upon the last ground stated in the opinion.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event.

---

(157 App. Div. 876.)

PHILLIPS v. CROSSTOWN ST. RY. CO. OF BUFFALO et al.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1913.)

MASTER AND SERVANT (§ 240*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Even if the rules of a railway company for the slow going and stopping of a car on approaching a standing car were applicable to the place, the conductor of a standing car, who, having no occasion for haste, started

from one end of his car towards the other end, going on the track of and towards an approaching car, instead of waiting for it to pass, or going round the other side of his car, was guilty of contributory negligence as matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 751–756; Dec. Dig. § 240.*]

Kruse, P. J., and Robson, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Margaret E. Phillips, administratrix of Charles M. Phillips, deceased, against the Crosstown Street Railway Company of Buffalo and the International Railway Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendants appeal. Reversed, and new trial granted.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Roscoe R. Mitchell, of Buffalo, for appellants.
George H. Kennedy, of Buffalo, for respondent.

LAMBERT, J. The facts are very fully and fairly stated in the dissenting opinion, and their repetition seems unnecessary. The single question of moment is as to intestate's freedom from contributory negligence. It must be conceded that, except for the claimed right of intestate to rely upon the observance of rules 50 and 50a, by the motorman of the car which injured him, there could be no question for a jury. I understand such concession to be made by the dissenting opinion. The question, then, is the effect of such rules upon the respective duties of intestate and such motorman. Both rules are fully set forth in the opinion of Mr. Justice KRUSE.

It is obvious, from the mere reading of these rules, that their primary design was to protect persons alighting from standing cars in usual operation. They were evidently not designed especially for the protection of employés when not so alighting. It is also doubtful whether they have any application to the unusual, and in a way emergency, situation presented by the facts of this case. They were designed for the ordinary operation of the road, rather than for the temporary requirements occasioned by the repairing of this bridge. If they have no application, then intestate had no right, as it is claimed he did, to rely upon same in governing his course of conduct.

Rule 50 simply provides for slow speed while passing standing cars. Such requirement is somewhat elastic, and would vary when construed by different employés, and the proof shows no flagrant violation in this particular. It is upon rule 50a that chief reliance is placed; it being urged that the stopping of the car as required by this rule (assuming it has application) would involve such a slackening of its speed as would have permitted intestate to reach the door by which he sought to enter his car. The defect in such argument lies in the rule itself in connection with the proven facts. Such rule does not require the stopping of the moving car until its forward end was in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

juxtaposition with the rear end of the standing car. It is undisputed that intestate received his injuries somewhat prior to the time when the moving car reached that position, and hence it cannot be argued with much force that the failure so to stop in any wise contributed to the accident. Nor does the proof demonstrate that the car was moving at such a rate of speed, at the time intestate was injured, that it could have been thereafter stopped as required, in strict compliance with rule 50a.

However, in the view we take of the controlling facts in this case, it is not necessary to determine whether such rules have application; for, beside the application of these rules to this situation, there is a principle of law applicable which would seem to defeat a recovery. When the fender or lifeguard of the car had been changed, intestate then stood in a place of safety. There was no duty for him to perform, which required him to pass along this "devil strip." Neither was there any apparent occasion for haste upon his part in entering his car. There still remained ahead of his car another standing car, for the crossing over of which he must delay moving his car up to the bridge. His objective point, it is true, was the open door at the further end of the car, opening onto the "devil strip." Eventually he would have to reach that door. Of course, he knew of the presence of the moving car, for he was awaiting its departure. His failure to observe its approach would be the grossest negligence upon his part. We must assume he saw it, as it is only upon that theory that there can be any pretense of a recovery in this action. Thus situated, and so observing this oncoming car, intestate had a choice of several courses of action. The obviously safe thing for him to do was to wait until the car passed him, if he especially desired to adopt a course along this "devil strip." Or, desiring to at once proceed, he could take a few additional steps required to pass the other side of his car, along the driveway outside the tracks. Either of such courses of action was perfectly safe and embodied no element of danger whatever. It neither required consideration of the application of any rules of the company, nor was dependent, for its safety, upon the conduct of any other employé. While this presented a choice of action, and with no emergency apparent to distract his attention or affect his judgment, intestate chose the only way that embodied any element of danger, and started along the "devil strip" in the very face of the oncoming car. Not only that, but it is very conclusively shown by the evidence that he realized his danger almost from the time he started, and undertook a contest of speed with this moving car, to see which should reach the open door first.

Such conduct, by intestate, would seem to be squarely within the decision of the Court of Appeals in the case of Hogan v. N. Y. C. & H. R. R. Co., 208 N. Y. 445, 102 N. E. 517, which I read to hold that where an employé has his choice of two ways of passage, the one of which is obviously open and safe, and the other of which involves an element of danger, his voluntary selection of the latter renders him guilty of contributory negligence, as a matter of law. However regrettable the results to the plaintiff, I see no justification for holding

the defendant responsible for an accident wholly chargeable to error in judgment upon the part of intestate.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except KRUSE, P. J., and ROBSON, J., who dissent in an opinion by KRUSE, P. J.

KRUSE, P. J. (dissenting). The plaintiff's intestate, a street car conductor, was caught and crushed between his car, which was standing on one track, and a moving car on another track, receiving injuries resulting in his death. It is claimed that the motorman of the moving car was careless in approaching the standing car at an unusual speed and without stopping his car or slowing down and approaching it cautiously. Under the provisions of section 64 of the Railroad Law (Laws of 1910, c. 481 [Consol. Laws 1910, c. 49] art. 3, § 64), the defendant railway companies are liable for the negligence of the motorman who was in physical control of the moving car.

That the motorman was negligent is well established by the evidence. Indeed, the finding of the jury that the motorman was negligent does not seem to be seriously questioned. It is urged, however, that the plaintiff's intestate, the conductor who lost his life, was guilty of contributory negligence in voluntarily placing himself in the place of danger. He had come with his car from the east upon a west-bound track. His car was waiting to take its turn in loading passengers. It was standing on the west-bound track, with one or two cars ahead of it. His passengers had left the car, alighting at the front or west end of the car on the right or north side, walking westerly over a bridge to a car on the west side thereof, to convey them westward into the city. The bridge was being repaired, so that no cars passed over it; the west-bound cars, after unloading, running from their track over a cross-over to the east-bound track, and there taking on passengers coming from the west side of the bridge, and then returning eastward on the east-bound track. The space between a car standing on the west-bound track and a passing car on the east-bound track was about 10 inches.

The car which did the harm was crowded. There were several passengers in the front vestibule, standing with the motorman. The speed of this car as it left the starting point east of the bridge and passed the standing car of the conductor who was killed is in dispute. But that the car did not stop when it reached the standing car is not in dispute. While the passengers were alighting, the conductor of the standing car and his motorman commenced to prepare their car for the return trip. They closed the rear or east door on the south side, and opened the front or west doors on the north side, of the car. The fender or lifeguard was taken from the front or west end, and carried around to the east end, and there attached to the car. After that had been done, the conductor started west on the south side of the car. He must have seen the approaching car, which was lighted and coming towards him, for he walked or ran directly toward it. The inference is permissible that he thought he would have time to reach the west end of his car, and the finding from the evidence is warranted that he

could have done so if the approaching car had stopped, or even slackened its speed, as plaintiff contends the rules of the company and reasonable prudence required.

I think the conductor would be chargeable with negligence as a matter of law in being where he was when struck, were it not for the rules and practice usual in moving cars past standing cars. Rule 50a, introduced by the plaintiff, is as follows:

"Endeavor wherever possible to meet cars going in opposite direction between blocks, thereby avoiding the necessity of making a stop. Inside city limits of Buffalo, do not pass a car standing on opposite track, but bring car to a full stop, the front end thereof even with the rear end of the other car. Do not start until receiving go-ahead signal, two bells."

That rule was admitted by the defendants to have been in force at the time of the accident, but it was claimed that it had no application to this situation, and at the suggestion of defendants' counsel rule 50 was introduced, which provides that:

"When passing standing cars, gong must be rung and car brought to slow speed."

Plaintiff contends that the defendants practically concede that rule to be applicable. At all events, its own chief instructor in the school for instructing defendants' employés respecting their duties seems to so claim and testify, but states that rule 50a applies to cars standing at a street crossing, while the car is taking on or unloading passengers. But the testimony of the defendants' division superintendent indicates that rule 50a applied to the situation here, and the learned counsel for the defendants seemed to recognize that the question was one of fact, since in connection with his exception to that part of the charge in which the judge referred to the right of Phillips, the intestate, to rely upon the rule in regard to the car stopping, he asked the judge to leave that question to the jury as one of fact, to which the judge replied that he had undertaken to do so, and went over the ground again.

Defendants' counsel contends, further, that the conductor was guilty of contributory negligence in opening the door at the southwest corner of his car before crossing over to the east-bound track. While I think that the evidence is such that the jury could find that that was contrary to the rules of the company, I do not see how the opening of the doors could possibly be a proximate or contributing cause to the accident. But in any event it was a fair question of fact as to whether it was not customary to do that at this place under these circumstances, and the court seems finally to have left that question to the jury fully as favorably to the defendants as they were entitled.

The real question respecting the contributory negligence of the conductor in going toward the west end of his car depends largely upon whether these rules applied. If rule 50a applies, and had been observed, the conductor would have had abundant time to reach the west end of the car. But, even if that does not apply, I still think it would be a question of fact as to whether the motorman was negligent. There is testimony to the effect that the car started off at a rapid rate, about 10 miles an hour, and that its speed increased as it approached the standing car, so that at the time of the accident it was going about

14 or 15 miles an hour. While we may assume that the conductor who was killed must have seen the lighted approaching car, I think it cannot be held .as a matter of law that he knew or should have known just how fast the car was approaching, or that it would not stop or slacken its speed when it reached the standing car. Even if rule 50a does not apply, it would seem that he could rely to some extent that the car would go slow and approach with caution the standing cars, as rule 50 required, and as common prudence would seem to suggest.

The only other question is that of damages. The verdict was for $10,000. The division superintendent himself testifies that the conductor was one of the best men he had ever had work under him; was careful, very reliable, and was about to be promoted. He was 35 years old at the time of his death. He left two children, besides his widow. His earnings as conductor were $75 to $80 a month. He was in excellent health, industrious, temperate, and his family were dependent upon his earnings for support.

I think the verdict was not excessive, and that the judgment and order should be affirmed.