could not be supported at the point where it is alleged to have occurred.

Ordinarily, of course, a short distance of error in the location of the accident would not be material; but here the very essence of the liability depends upon. the location. If the .accident occurred near the center of the Hudson river, as the complaint says it did, then there was no possible reason for the decedent to be doing the work which the plaintiff's witness says he was doing. The only object of his being at the center of the river would be to be taking down the platform at that point. There is no dispute that this was the work under way there, and that would be fatal to the plaintiff's case. It only required a little invention to bring the case closely within the words of the statute, and it seems to us that the case is one where this court is justified in holding that the verdict is against the weight of the evidence, and that it should be submitted to another jury.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event. All concur, except HOWARD, J., who dissents.

═══════════

### DRUSKY v. SCHENECTADY RY. CO.

(Supreme Court, Appellate Division, Third Department.   November 11, 1914.)

1. STREET RAILROADS (§ 117*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.
    In an action for the death of a person struck by a street car, evidence *held* to make a question for the jury as to defendant's negligence, either in recklessly operating the car at an excessive rate of speed, in violation of its own rules and an ordinance of the city, or in failing to stop the car if, as claimed, it was traveling at a low rate of speed.

    [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. § 117.*]

2. STREET RAILROADS (§ 117*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.
    In an action for the death of a deaf mute, struck by a street car at a street intersection, where, until one month before the accident, all cars had been brought to a full stop, evidence *held* to make a question for the jury as to contributory negligence, especially in view of Code Civ. Proc. § 841b, placing the burden of pleading and proving contributory negligence in actions for death on defendant.

    [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. § 117.*]

3. STREET RAILROADS (§ 100*)—LIABILITY FOR INJURIES—CONTRIBUTORY NEGLIGENCE.
    It is not, under all circumstances, negligence for a deaf person to walk unattended about the streets, though this infirmity imposes the duty of exercising greater care in passing over street crossings than would be required of a person possessed of good hearing.

    [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 217; Dec. Dig. § 100.*]

4. NEGLIGENCE (§ 136*)—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE.
    It is only where it clearly appears from the circumstances, or.is proved by uncontroverted evidence, that a party injured has by his own acts and neglect contributed to the injury, that the ·court can determine this ques-

───────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion; and if the jury may find a person free from contributory negligence on any reasonable theory, they should be permitted to do so.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

5. STREET RAILROADS (§ 98*)—LIABILITY FOR INJURIES—CONTRIBUTORY NEGLIGENCE.

Whether a person struck by a street car was guilty of contributory negligence depended on whether, under all the circumstances and conditions, he exercised the care and caution of a reasonably prudent person in attempting to cross the street.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 204–208; Dec. Dig. § 98.*]

6. APPEAL AND ERROR (§ 927*)—REVIEW—GRANTING OF NONSUIT.

In determining whether a nonsuit was properly granted, plaintiff is entitled to the most favorable inferences deducible from the evidence, and all contested facts are to be treated as established in her favor.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. § 927.*]

Appeal from Trial Term, Schenectady County.

Action by Rose Drusky, as administratrix of Meyer Drusky, deceased, against the Schenectady Railway Company. From a judgment on a nonsuit granted at the close of the evidence, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Frank Cooper, of Schenectady, for appellant.
Naylon & Robinson, of Schenectady, for respondent.

LYON, J. Plaintiff's intestate, who was a deaf mute, was struck by one of defendant's cars while attempting to cross State street at or near its intersection with Ferry street in the city of Schenectady, and sustained injuries which resulted in his death two days later. In this action, brought to recover damages on account of his death, the court at the close of the evidence granted a nonsuit upon the ground of contributory negligence of the decedent. The correctness of that ruling is the sole question involved upon this appeal.

[1, 2] State street, which was the main business street of the city, runs nearly east and west, and upon it defendant had for a long time maintained two lines of tracks, operating its cars by electricity. Ferry street, which is a narrow street, runs practically north and south, crossing State street at nearly right angles in a populous part of the city. For upwards of 10 years the shop of plaintiff's intestate, who was a tailor, and who during the latter part of his life conducted a news stand in connection with that business, had been situated on Ferry street, within one block of the crossing of State and Ferry streets, while his place of residence had been in that immediate vicinity for a longer time. In connection with the news business, decedent had been accustomed almost daily, at about 6 o'clock in the morning, to go along Ferry street to State street and obtain newspapers, which had been left for him near the crossing, with which to supply the trade of his

news stand. Other business also took him to this locality, and at the time he was injured he was thoroughly familiar with the location.

On the morning of March 6, 1914, plaintiff's intestate passed along the east side of Ferry street to State street, and while crossing State street was struck by one of defendant's east-bound cars and sustained fatal injuries. The morning was cool and clear. The track on State street was nearly straight. There were no vehicles to obstruct the view, and plaintiff's intestate, whose eyesight may be assumed to have been good, could have readily seen a car approaching in either direction for several hundred feet. An eyewitness, called by the plaintiff, testified that decedent, upon reaching the north curb of State street, looked both east and west along the track, then stepped from the curb and started to cross State street, following the path which had been shoveled out for the easterly crosswalk, and that he was not seen to look again, although the witness says he might have looked, until after he had crossed the west-bound track, and was in the center of the east-bound track, a distance of about 25 feet from the north curb, when, suddenly glancing to the west he saw the car approaching, and, starting quickly, slipped upon the ice and ran diagonally to the east about 10 feet towards the south rail, where he was struck and run over, and dragged 40 or 50 feet, when the car was stopped and decedent's body taken from under it. The testimony of the motorman was that decedent was about 50 feet east of the crossing when he was struck by the car, and that, seeing it approaching, he ran towards it, and that decedent's body was carried less than 6 or 7 feet. The car was a single truck car, empty, and operated by a motorman and conductor, who were not regular, but extra, men, and was known as the shop car, which left the barn at about 6 a. m.

The speed of the car was a subject of broad divergence of opinion. The motorman placed the speed at 6 miles per hour as it proceeded towards Ferry street and at 4 miles per hour at the time it struck decedent. Testimony introduced by the plaintiff was to the effect that the speed of the car up to the time it reached Ferry street was from 18 to 22 miles per hour, and that it had lessened but slightly at the time it struck decedent. An ordinance of the city of Schenectady forbade the running of trolley cars at exceeding 12 miles per hour, and a rule of the defendant required east-bound cars to be run at low speed to Ferry street. It may be noted, as bearing upon the question of speed, that the car left the barn one minute late, as the conductor and motorman testified, and that some distance east of Ferry street the two tracks merged into one, over which in each direction cars of other roads or divisions also passed, and that unless the shop car reached the single track on time, the right of way would be given to other cars, and the shop car would be compelled to await a clear track before proceeding. While the rail was dry, there was more or less of an accumulation of ice and snow each side of the rails and between the tracks, and over the crossing, requiring decedent to give attention and use some care as he proceeded. The weight of testimony was that the gong was sounded as the car approached decedent. The motorman and conductor testified that the motorman also shouted to the decedent. Whether the testimony of plaintiff's witnesses as to the rate of

speed of the car, corroborated by the distance to which it was claimed the body was carried, be accepted, or the testimony of the motorman as to the low rate of speed just before decedent was struck, coupled with the testimony as to the few feet within which the car could have been brought to a full stop by the use of the emergency brake, be accepted, the jury would have been fully warranted in finding the defendant guilty of negligence in recklessly operating its car, in violation of its own rules and an ordinance of the city, thereby causing the death of plaintiff's intestate.

As bearing on the question of contributory negligence, it appears that immediately preceding February 8, 1914, for 5 or 6 years, as the general manager of defendant testified, and for 15 years, as a witness whose place of business had been at the corner of State and Ferry streets testified, the defendant had brought its east-bound cars to a dead stop at the crossing of State and Ferry streets, which was a stopping required by the defendant's rules, regardless of whether a passenger was to be received or discharged at that point, and that on that day the defendant permanently discontinued making such stop, and substituted a stop upon the near side of the street upon signal. No public notice of the change was given by the defendant, otherwise than by removing from a wire of the company a small red sign which hung near the crossing for the guidance of motormen, indicating that a stop should be made. However, notices of the changes were posted in the car barn and division offices, and two of the daily newspapers of the city of Schenectady published, as matter of local news, articles relating to changes by defendant in the manner of operating its cars upon State street. In an issue of January 30th, under the heading of "Near Side Stops on State Street," it was stated that:

"All east-bound cars, those passing up State street, will stop, under the new rules, at the near side of Ferry street. * * * For east-bound cars the stops at the far side of Ferry street * * * will be eliminated."

The same newspaper contained in its issue of February 6, 1914, under the heading "Near Side Stops on State Street Effective at Noon Sunday," the following:

"The dead stop, east-bound. at Ferry street, will be abandoned, and cars will be operated slowly, as at present, in passing Fire Station No. 2, and the slow speed continued until Ferry street is passed."

The other newspaper, in its issue of February 6, 1914, under the heading of "New Car Stops Much in Favor," said:

"There will be no stop at Ferry street for cars coming up the street, but they will be operated at low speed from a point below Fire Station No. 2 to Ferry street."

Such point was about 200 feet west of Ferry street.

While the record is devoid of direct evidence upon the subject, it may fairly be presumed, from decedent's familiarity with the Ferry street crossing and the long time during which the practice of making the stop had existed, that decedent knew of the dead stop made by east-bound cars, and that in attempting to cross State street he not only relied upon the motorman exercising reasonable care in operating the car, but also relied upon the dead stop being made. There is

nothing in the evidence indicating that decedent knew of the change made by defendant in its rules, and the abandonment of the dead stop at Ferry street, or sufficient to charge him with knowledge. The testimony is that decedent seldom read the newspapers, excepting when some member of the family called his attention to some particular article, and that witnesses who knew of the defendant's practice of making a dead stop at Ferry street had no information of the change of the rule. Even had the decedent read the newspaper articles, he would have been informed that, while east-bound cars no longer made the usual stop at the Ferry street crossing, such cars would be operated at low speed from a point below the fire station to Ferry street.

[3] While plaintiff's intestate was deaf, it was not, under all circumstances, negligence for him to walk unattended about the streets, although doubtless his infirmity imposed upon him the corresponding duty of exercising greater care for his safety in passing over the street crossing, and demanded that he be more vigilant in the use of his eyes than would have been required had he been possessed of good hearing.

The rules of law relating to the granting of nonsuits in negligence actions are well settled. On the trial of any action to recover damages for causing death, the contributory negligence of the person killed shall be a defense to be pleaded and proven by the defendant. Code Civ. Proc. § 841b.

[4] "It is only where it clearly appears from the circumstances, or is proved by uncontroverted evidence, that the party injured has, by his own acts and neglect, contributed to the injury, that the court can determine that question. The cases are exceptional where it can be held that contributory negligence was so conclusively established that nothing was left either of inference or of fact to be determined by a jury." Kettle v. Turl, 162 N. Y. 255, 56 N. E. 626; Fogarty v. Pittsburg Contracting Co., 152 App. Div. 409, 137 N. Y. Supp. 589. "Undoubtedly, if the evidence permitted the jury to find the intestate free from contributory negligence on any reasonable theory, it would be the duty of the court to permit it so to do." Hogan v. N. Y. C. & H. R. R. Co., 208 N. Y. 445, 450, 102 N. E. 517, 518.

[5, 6] After all, it was simply a question as to whether plaintiff's intestate, under all the circumstances and conditions, exercised the care and caution of a reasonably prudent person in attempting to cross the street; and in determining the correctness of the court's decision in granting the nonsuit, the plaintiff is entitled to the most favorable inferences deducible from the evidence, and all contested facts are to be treated as established in his favor. Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287; Waldron v. Fargo, 170 N. Y. 130, 62 N. E. 1077; Sundheimer v. City of New York, 176 N. Y. 495, 68 N. E. 867; Koehler, Adm'x, v. New York Steam Co., 183 N. Y. 1, 75 N. E. 538. We think the plaintiff was entitled to have the case submitted to the jury upon the issues, both as to the negligence of the defendant and the negligence of plaintiff's intestate, and that granting the nonsuit was error.

The judgment should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.